IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Syed Rizwan Mohiuddin | § | Case No. 15-34752—H1 |
| | § | |
| Alleged Debtor. | § | (Involuntary Chapter 7) |
| | § | |
| Randy Williams, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. _____ |
| | § | |
| Syed Rizwan Mohiuddin | § | |
| | § | |
| Defendant. | § | |

## <u>COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. § 727</u>

COMES NOW, Randy W. Williams, chapter 7 Trustee, Plaintiff herein (hereinafter "Trustee"), and files his Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727(a) against Syed Rizwan Mohiuddin, Defendant herein and Debtor (hereinafter "Debtor"), and shows as follows:

### I.   PARTIES

1.   Plaintiff is the chapter 7 Trustee assigned to this case, *In re Syed Rizwan Mohiuddin*, Case No. 15-34752 in the Southern District of Texas.

2.   Defendant is the individual Debtor in this case, who can be served at his residence located at 5622 Havenwoods Drive, Houston, Texas 77066-2412.

### II.   JURISDICTION & CONSTITUTIONAL AUTHORITY

3.   This is an adversary proceeding in which Trustee is seeking a judgment denying the Debtor's discharge under 11 U.S.C. § 727.

4.   This Complaint is timely.  While the Clerk noticed a § 341 meeting in this case that purportedly set a deadline to object to discharge, which, out of an abundance of caution the Trustee requested the Court extend, neither the deadline nor the meeting was properly noticed because the Debtor failed to file a mailing matrix.  As a result, only those parties appearing in the involuntary received notice.

5.   Notice of a § 341 meeting is not supposed to be given until the debtor files a mailing matrix.  While one was ultimately filed in this case, it is deficient because the Debtor failed to sign it.  The Trustee believes that this act alone is sufficient for the discharge to be denied in this case, because the Debtor is either refusing, or is unable in order to preserve his Constitutional right against self-incrimination, to comply with the requirements of a debtor in chapter 7 under title 11 and the Bankruptcy Rules.

6.   Subject to the foregoing paragraphs 4 and 5, the current "deadline" for filing a complaint to determine the Debtor's eligibility for discharge is April 1, 2017.

7.   The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 727.

8.   This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157(2)(J).  The Court may enter final judgment on the issue of discharge.

### III.   FACTS

9.   Prior to the institution of this bankruptcy case, the Debtor was engaged in a variety of businesses, including commercial real estate financing and development.  He operated numerous companies through which he conducted business, including American National Title Company, Imagine Hospitality, GJR Title Services, Inc., Castle Development and Construction, Inc., Sydenham Management, New Era Nursing and Rehabilitation, LLP,

Tidwell/Parkway Ventures, LLC, MMAF & JMIN Investment, LLC, ARA Financial Investment, Inc., Windgate Mortgage LLC, and AFM Investment, Inc.

10.   The Debtor used these businesses to perpetrate frauds wherein millions of dollars was raised and paid to entities he controlled at the ultimate expense of lenders and title insurance companies such as petitioning creditors Fidelity National Title Insurance Company, American Capital Funding, and Chimney Joint Venture.

11.   On October 4, 2011, the Debtor and an associate, Ghulam M. Durrani, were found liable for common law fraud, statutory fraud, violations of the Uniform Fraudulent Transfer Act and conspiracy for a scheme in which they held themselves out as representatives of developer Deyaar Development Corporation in order to obtain a loan.  They fraudulently obtained an $8,000,000 loan that allowed them to retain $6,900,000 in net loan proceeds.

12.   Again in 2008, the Debtor held himself out as an authorized representative of BHG Holdings, LLC in order to obtain a $1,212,000 loan from JLE Investors, Inc. secured by the Super Inn motel property owned by BHG Holdings, LLC located in Odessa, Ector County, Texas.  Debtor conspired with others, including Vikram Cheema, Inderjit Cheema, Jennifer Sydenham, and U.S. Cheema, in order to obtain the loan from JLE Investors, Inc. under the fraudulent pretense that the transaction was authorized by BHG Holdings, LLC when in fact it was not.  Debtor then absconded with and failed to repay the loan proceeds of $1,212,000.

13.   In other instances, the Debtor purchased  property through one of his entities or an entity controlled by an associate, then, through his company American National Title Company as closing agent, would fail to pay prior loans when disbursing loan proceeds, and instead keep the proceeds for himself or transfer them to another  entity he controlled.  The lender(s) who should have been paid at closing were unaware that a closing had taken place

and did not release lien(s), and the buyer's lender would mistakenly believe itself to hold a first lien position. In some cases, American National Title Company perpetrated such a fraud with regard to a property purchased by a third party.  Sometimes, the Debtor would forge signatures to facilitate the sales.

14.  In 1999, the Debtor obtained $3,900,000 through fraud as described above with regard to a property located at 3510 Sherman St., Houston, Texas.

15.  In 2006, the Debtor obtained $4,074,332.98 through fraud as described above with regard to a property located at 16510 I-45 North, Houston, Texas.

16.  In 2006, the Debtor obtained $835,827.37 through fraud as described above with regard to a property described as Gas Station-1.427 acres, Lots 21 and 22, Harris County, Texas.

17.  In 2007, the Debtor obtained $2,000,000 through fraud as described above with regard to a property located at 6 North Sam Houston Pkwy East, Houston, Texas.

18.  In 2007, the Debtor obtained $2,500,000 through fraud as described above with regard to a property located at 17141 I-10 East, Channel View, Texas.

19.  In 2009, the Debtor obtained $429,018.52 through fraud as described above with regard to a property located at 6101 Broadway in Galveston, Texas.

20.  In 2010, the Debtor obtained $717,589.60 through fraud as described above with regard to a property located at 59 Wincrest Falls Drive, Cypress, Texas.

21.  In 2010, the Debtor obtained at least $700,000.00 through fraud as described above with regard to a property located at 301 East Tidwell Rd., Houston, Texas.

22.  In sum, between 1999 and 2010, the Debtor obtained at least $23,268,768.47 from real estate fraud.  The Debtor cannot account for what happened to these proceeds in sufficient

detail to allow the Trustee or his creditors to understand the ultimate disposition and/or use of the funds.  The Debtor used a myriad of entities that he, relatives and associates owned and/or controlled to which these funds were disbursed for the specific purpose of making it difficult, if not impossible, for those funds to be traced after the fact.

23.  On September 8, 2015, an involuntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") was filed for the Debtor in the United States Bankruptcy Court for the Southern District of Texas.  An order for relief was entered on October 6, 2015 [Docket No. 10], and on November 17, 2015, the Trustee was appointed.

24.  As discussed above, notwithstanding the fact that no mailing matrix was filed, on May 2, 2016, a meeting of creditors was set.  At the meeting, the Debtor invoked his Fifth Amendment privilege in refusing to answer questions with respect to information he was required to provide under the Bankruptcy Code and Rules.  The meeting was continued because the Debtor had not filed any of the required documents, including a creditor matrix.

25.  The Debtor has also not taken the required Bankruptcy counseling or course.

26.  On or about May 2, 2016, Trustee filed a motion requesting an order to seize estate property from the Debtor.  The Court granted this order on May 11, 2016, and it was served by the U.S. Marshalls.  At the time the order was served, the Trustee took possession of certain records of the Debtor, including an external hard drive, a Toshiba computer, a MacBook Pro computer, an iPad, and a Dell desktop computer.

27.  On May 12, 2016, the Debtor filed an Emergency Motion to Obtain Relief From Order to Seize Estate Property, citing an ongoing criminal investigation against him filed

under seal.  In this Motion, the Debtor stated that the criminal investigation was the reason he asserted his Fifth Amendment right during the meeting of creditors.

28.  The seized property did not contain sufficient information to assess the financial assets and liabilities of the Debtor.  The majority of the information was emails sent from the Debtor's wife relating to a catering business she runs.  There was limited information pertaining to the Debtor's entity New Era Nursing & Rehabilitation, and no other information relating to the Debtor's financials or those of his numerous companies, including disbursement and/or use of the funds fraudulently obtained by the Debtor.

29.  On June 28, 2016, the Debtor filed his Schedule A, Schedule B, Schedule C, and Statement of Financial Affairs ("SOFA").  The Debtor only provided information regarding his "[h]ousehold goods and furnishings, including audio, video, and computer equipment." For every other category of asset, Debtor wrote "Debtor invokes the privilege under the Fifth Amendment to the United States Constitution and respectfully declines to provide an answer." In the SOFA, the Debtor only provided the name of his wife.

30.  Based on inquiry by the Trustee, the criminal investigation related to the Debtor involves allegations that he committed various criminal acts of fraud related to the conduct described above in various real estate closings.  Therefore, the Trustee believes that Debtor's assertion of a Fifth Amendment privilege regarding disclosure of assets at the time of closing, as well as financial affairs, that post-date the alleged criminal activity by several years is not valid.  The Debtor simply wants the bankruptcy case, like the pending criminal investigation, to be stalled to prevent his ultimate incarceration for his criminal acts.

31. The Trustee does not suggest that he is not entitled to properly invoke his Constitutional rights if properly invoked, but here, the assets he possessed at the time he filed,

the identity of his creditors at that time, and his financial conduct in the few years prior to the order of relief are not the subjects of investigation by any criminal body.  So unless the Debtor is suggesting that within the years immediately preceding his case or at the time of filing he was involved in conduct that may also place him in criminal jeopardy, then the excuse of the pending investigation must fail.

## IV.     OBJECTIONS TO DISCHARGE

32.  The preceding paragraphs are fully incorporated herein by reference.

33.  "The concept behind § 727 is that a bankruptcy discharge is not a matter of right but rather a statutory privilege afforded a debtor who meets certain requirements."  *In re Horridge*, 127 B.R. 798, 799 (S.D. Tex. 1991).  Such a debtor is described by the often quoted phrase, "the honest but unfortunate debtor."  "Each provision of 11 U.S.C. § 727 specifies separate reasons for denying a discharge to the debtor who has committed certain wrongdoings in connection with his bankruptcy filing."  *Id.*  Here, the Debtor is not "honest but unfortunate"; instead, he has committed several of these wrongdoings.  Importantly, the Debtor's invocation of his Fifth Amendment privilege does not excuse him from certain requirements of disclosure and cooperation that are prerequisites for discharge.  *See In re Lopez*, 532 B.R. 140, 158 (Bankr. C.D. Cal. 2015).

### A.  Count I: 727(a)(3)

34.  Section 727(a) of the Bankruptcy Code provides that the court shall not grant a discharge if:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

7

35. "[T]he Court must deny a discharge under § 727(a)(3) if the Plaintiff can demonstrate that [the] Defendant failed to keep records or to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *In re Buescher*, 491 B.R. 419, 438 (Bankr. E.D. Tex. 2013), *aff'd*, 783 F.3d 302 (5th Cir. 2015) (quotation omitted).  "The duty to turn over the property of the estate is not contingent upon any demand by the Trustee; rather the obligation is self-operative and mandatory." *In re Reeves*, 509 B.R. 35, 65 (Bankr. S.D. Tex. 2014).  Further, the duty cannot be abrogated by asserting the Fifth Amendment privilege against self-incrimination.  *In re Lopez*, 532 B.R. at 158.

36. Under 727(a)(3), a plaintiff must prove that a debtor: (1) failed to keep and preserve financial records; and (2) that this failure prevented the plaintiff from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003).  Intent is not an element. *Buescher*, 491 B.R. at 437.  "Records are not adequate if they do not provide enough information for the creditors or the trustee to ascertain the debtor's financial condition or to track her financial dealings with substantial completeness and accuracy for a reasonable period into the past." *Id.* at 438.  "If this evidentiary burden is sustained, the burden shifts to the debtor to show the inadequacy is justified under all of the circumstances." *Id.* at 437.

37. Here, as evident from the documents seized from the Debtor, while the Debtor kept records of his fraudulent transaction, the Debtor failed to keep records that allows the Trustee to access what he did with the proceeds he wrongfully received.  The Debtor failed to keep or preserve records which would allow the Trustee to ascertain the Debtor's prepetition financial dealings and/or financial condition.  The only documents that the Trustee was able to

obtain from the Debtor are the documents seized on premises, which were wholly insufficient to paint an adequate picture of the Debtor's prepetition financial affairs, especially as they relate to use of funds.

38.   In   ruling   on   the   application   of   727(a)(3),   a   court   should   consider   all circumstances, including the debtor's level of sophistication.  *In re Henley*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012).  Here, the Debtor was deeply involved in sophisticated real estate transactions and maintained numerous businesses.  Therefore, his failure to maintain adequate records is particularly egregious.

39.   The Debtor has therefore concealed, destroyed, or failed to keep or preserve recorded information from which his financial condition or business transactions could be ascertained, and the Court should deny his discharge for this reason.

### B.  Count II: 727(a)(4)(D)

40.   The Court must also deny discharge if the Trustee shows that:

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

41.   "All books and records which are material to an understanding of a debtor's financial condition and transactions are within the scope of § 727(a)(4)(D)."  *In re Cantu*, No. ADV. 09-7018, 2011 WL 672336, at *27 (Bankr. S.D. Tex. Feb. 17, 2011).  Fraudulent intent may be proven by circumstantial evidence.  *In re Powers*, 112 B.R. 184, 187 (Bankr. S.D. Tex. 1989), *aff'd*, 979 F.2d 1533 (5th Cir. 1992).  Here, the Debtor refused to cooperate with the Trustee in providing access to recorded information relating to the Debtor's financial affairs.   The complete lack of information related to the Debtor's personal finances here

implies more than simple negligence, especially considering the Debtor's sophistication.  It is circumstantial evidence that the Debtor knowingly and fraudulently secreted or withheld relevant information.

42.  The Debtor's discharge should therefore be denied because he knowingly and fraudulently withheld from the Trustee recorded information relating to his property or financial affairs.

### C.  Count III: 727(a)(5)

43.  A debtor is also not entitled to a discharge if

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

44.  "The objecting creditor has the burden of proof under § 727(a)(5)."  *In re Kilroy*, No. 05-90083-HD-7, 2008 WL 780692, at *3 (Bankr. S.D. Tex. Mar. 24, 2008).  "To establish a prima facie case, the creditor must prove which assets are missing."  *Id.*  "Once the creditor can establish a prima facie case, the burden then shifts to the debtors to provide a satisfactory explanation for that loss."  *Id.*

45.  Here, the Debtor has failed to account for and/or explain what happened to millions of dollars he obtained through real estate fraud.  The affirmative obligations created by Section 727(a)(5) are not negated by the assertion of the Fifth Amendment privilege against self-incrimination.  *In re Horridge*, 127 B.R. at 799.  "Section 727(a)(5) would be meaningless if debtors could dispose of their assets prior to the filing of bankruptcy and then withhold all information from creditors by asserting  a claim of privilege. The provisions of § 727 were not meant to create this imbalance."  *Id.* at 799–800.  Therefore, even if Debtor is entitled to plead the Fifth Amendment in response to certain questions on his schedules, he is

still required to provide the Court with information showing the disposition of substantial assets of the estate.

46. Therefore, the Debtor has failed to explain satisfactorily a loss of assets to meet his liabilities, and his failure to do so is grounds for denial of discharge under 727(a)(5).

### D.  Count IV: 727(a)(6)(C)

47. Finally, the Debtor is not entitled to discharge if

> (6) the debtor has refused, in the case—
> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify.

48. While 727(a)(6)(C) protects the debtor's right to assert the Fifth Amendment privilege against self-incrimination, "[a] blanket assertion of the privilege is unacceptable." *In re Piperi*, 137 B.R. 644, 646 (Bankr. S.D. Tex. 1991).  Therefore, a blanket assertion is not considered to be the "properly invoked" privilege contemplated by 727(a)(6)(C).  Instead, "for each and every assertion of Fifth Amendment privilege," "[t]he debtor must come forward with some minimal credible reasons that disclosure poses a real threat of incrimination." *Id.* In *Piperi*, the Debtor refused to respond to any inquiry on the schedules and SOFA except his name, citing generally to criminal investigations he asserted were pending against him. *Id.* The Court found the blanket invocation insufficient for a proper assertion of the privilege. *Id.* at 647.

49. In another case, a bankruptcy court found the debtor's assertion of the Fifth Amendment even to "innocuous" questions like his marital status to be improper.  *In re Connelly*, 59 B.R. 421, 434 (Bankr. N.D. Ill. 1986).  The court held that the debtor's citation to a general criminal investigation was an insufficiently specific reason for failing to answer almost every question.  *Id.*  It further specified that "the witness bears the burden of

11

identifying the criminal charge or supplying sufficient facts so that a particular criminal charge can be reasonably identified by the court." *Id.*

50.  Here, the Debtor has not provided any specificity to demonstrate a reasonable fear of apprehension on an identifiable charge.  As in *Connelly*, the Debtor only generally pointed to a criminal investigation as reasoning for his invocation of the Fifth Amendment.  The Debtor has provided no detail regarding a real threat of specific charges connected to specific questions.  Moreover, many of the questions the Debtor has refused to answer are "innocuous," such as SOFA question 15, "Prior address of debtor".

51.  For these reasons, Debtor has not "properly" invoked the privilege, and therefore, his refusal to answer material questions is grounds for denial of discharge.

### E.  Count V: 727(a)(11)

52.  The Debtor is not entitled to receive a chapter 7 discharge because he has failed to take the required financial management course under section 727(a)(11).  Accordingly, no discharge can be entered.

### V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Trustee prays that the Debtor's discharge be denied and that the Trustee be awarded all costs and attorneys' fees to which he is entitled, and for such other and further relief as the Court deems just and proper either at law or in equity.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: Marie Delahoussaye

Marie E. Delahoussaye

12

Bruce J. Ruzinsky
State Bar No. 17469425
Federal I.D. 5037
Marie E. Delahoussaye
State Bar No. 24085953
Email: mdelahoussaye@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4342 (Telephone)
(713) 308-4183 (Facsimile)
Special Counsel for Randy W. Williams,
Chapter 7 Trustee

Preston T Towber
Email: preston@towberlaw.com
6750 West Loop South, Suite 920
Bellaire, Texas 77401
(832) 485-3556 (Telephone)
(832) 485-3550 (Facsimile)
General Counsel for Randy W. Williams,
Chapter 7 Trustee

13